## IN THE DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

DAVID KEYNES                              )
                                          )
                    *Plaintiff*,          )
                                          )
            v.                            )            Civil Action No.
                                          )
JOHN AND JANE DOES 1 THROUGH 100,         )
JOHN DOE CORPORATIONS 1 THROUGH 10,       )
OTHER JOHN DOE ENTITIES 1 THROUGH 10,     )
all whose true names are unknown,         )
                                          )
                    *Defendants*.         )
_____         )

## COMPLAINT

Plaintiffs, DAVID KEYNES ("Keynes"), through his undersigned counsel, bring this action against the Defendants and alleges as follows:

### I.       NATURE OF PROCEEDINGS

1.       This case concerns an intentional and malicious invasion of privacy through a computer hacking done by the Defendants which occurred without Keynes' knowledge or consent. On information and belief, Defendants hacked into the private server[1] of Bylock (Keynes' messaging application) and illegally obtained confidential information regarding Bylock's 493,512 users, including identifying information, 17,1691632 text messages, and approximately 3,000,000 emails. Keynes brings this lawsuit to recover damages associated with Defendants' unlawful intrusions into his server and application and to recover the reasonable attorneys' fees and costs he incurs in bringing this action.

---

[1] At the time of the hacking, Bylock used Baltic Servers, a Lithuanian company, as its server provider. Bylock now uses GoDaddy, a server company located in Arizona, United States.  Either way, the purpose of the hacking was to damage the company in the United States.

## II.    PARTIES

2.      Keynes is a naturalized U.S. citizen who was born in the Republic of Turkey and who has been living in the United States for over sixteen (16) years.

3.      Upon information and belief, Defendants John and Jane Does 1 through 100 (the "Individual Defendants") are individuals whose names and addresses of residences are unknown. Upon information and belief, these individuals have been employed by the government of Turkey to cause damage to Keynes hereto.

4.      Upon information and belief, Defendants John Doe Corporations 1 through 10 (the "Corporate Defendants") are corporations, the names, and addresses of the places of businesses of which are unknown.  Upon information and belief, these companies have been employed by the government of Turkey to cause damage to Keynes hereto.

5.      Upon information and belief, Defendants Other John Doe Entities 1 through 10 (the "Other Entity Defendants") are other legal entities, the names, and addresses of places of businesses of which are unknown. Upon information and belief, these entities have been employed by the government of Turkey to cause damage to Keynes hereto.  The Individual Defendants, Corporate Defendants, and Other Entity Defendants are collectively referred to as the Defendants.

## III.    JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Keynes' claims pursuant to 28 U.S.C. § 1331.

7.      All injuries to Keynes, in this case, occurred in the United States and, upon information and belief, were based upon actions dictated and planned in the United States, albeit by a foreign government, individual, or entity.  They are also intended to cause injury to a person and business located in the United States.

8.     This Court has supplemental jurisdiction over Keynes' related state-law claims pursuant to 28 U.S.C. §1367(a), *i.e.*, because those claims derive from the same nucleus of operative facts and form part of the same case and controversy. Each of Keynes' state-law claims are—like their federal claims—based on Defendants' intrusion into Plaintiff's servers and application.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because the events and omissions and other wrongful acts, giving rise to the claims, occurred in the District of Columbia. Venue is also proper in this Court because Defendants at all times relevant hereto either resided in or were assigned to and/or reported to superiors in this District.

## IV.     STATEMENT OF FACTS

### Technology of Bylock

10.     Bylock.net ("Bylock" or the "Application" or 'App") is a free publicly available encrypted messaging application, similar to "Viber" and "Whatsapp."

11.     The App was invented by a person named Atalay Candelen ("Candelen," also nicknamed the "Fox") and was fully funded by Keynes who purchased and concomitantly owns the Application.

12.     Keynes and Candelen met in May of 2003 and soon became good friends. In December 2013, the Fox designed the Application while Keynes provided the funds.

13.     Their aim was to present the Application to technology companies in Silicon Valley for eventual development.

14.     Although they never presented the App, Keynes is still the owner of Bylock and holds the records and rights of the Application in his name.

15.     Bylock's server is structured as a Virtual Private Server ("VPS") by GoDaddy.com, LLC ("GoDaddy"), a domain registrar and web hosting company with its principal place of business in Scottsdale, Arizona.

16.     The communication service is provided by end-to-end encryption as it is provided in other messenger application.

17.     The Application was available for download via the Google Play Store onto handsets running the Android operating system and via the Apple iTunes Store onto handsets running the Apple iOS operating system.

### Hacking of Bylock

18.     The App was officially in service between March 26, 2014, and April 2, 2016.

19.     The Application was available via the Apple Store from March 2014, but it was later removed on September 7, 2014.

20.     The App, however, remained available for download in the Google Store for another year. The App was also available for download through various websites after its removal from both mobile platforms.

21.     To date, the Application has been downloaded by 500,000 to 1,000,000 people, mostly from Turkey, Sweden, Azerbaijan, and Cyprus, with over 500,000 downloading the App on the Google Play Store and the rest downloading it on the Apple Store.

22.     During the years 2015 and 2016, the Defendants hacked Bylock by accessing its server and application, and at a minimum downloading personal and identifying information of Bylock's users.  It then held this information for future use against political dissidents.

23.     The actions they took against Blylock were both illegal as described herein and taken with the intention of destroying the business as well as persecuting the users.

### July 2016 Coup and Crack-down

24.     On or about July 15, 2016, there was an attempted coup against the Turkish government by certain members of the military.  It failed to succeed.

25.     The Turkish government blamed Muhammed Fethullah Gülen, a Turkish cleric who lives in the United States, for leading the July 2016 attempted coup.  The claim has been denied by Gülen.   Notably, the U.S. government (under both the Obama and Trump administrations) has refused Turkey's request to extradite Gülen.

26.     Regardless, followers of Gülen (the "Gülen Movement") were accused of orchestrating the failed coup attempt of July 15, 2016.

27.     In the aftermath of the coup attempt, the Turkish Intelligence Agency ("MIT") alleged that Bylock was used as a communication tool by tens of thousands of Gülen Movement followers to coordinate the coup.

28.     As reported by media around the world, Turkish authorities arrested over 172,000 people in a crackdown for supporting Gülen and, therefore, ostensibly supporting the coup. Approximately 77,081 people were imprisoned. Many of them were users of Bylock.

29.     Because of hacking Bylock's server and the App, Defendants were able to identity at least 215,092 users of Bylock and decrypted over 15 million encrypted messages.

30.     These discoveries led directly to the arrests and persecution herein.

31.     A U.S.-based think tank Freedom house listed Turkey among the countries in which internet freedoms are restricted most in its "2017 NET Freedom" report.

32.     Defendants accessed and used Keynes' and Bylock's information, as well as Bylock's 600,000 usernames and text messages without Keynes' knowledge or consent.

33. Defendants even hacked Keynes's personal email account. To this day, Keynes does not have access to the hacked email account.

34. The Defendants' actions have destroyed the Keynes' business.

**First Cause of Action**
**Violation of the Wiretap Act, 18 U.S.C. §2510 *et seq*.**

35. Keynes repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as it sets forth fully herein.

36. The Wiretap Act prohibits the willful interception of any wire, oral, or electronic communication.

37. A private right of action is created by 18 U.S.C. §2520 and is available to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used."

38. Defendants intentionally and willfully intercepted Bylock's private wire, oral, or electronic communications.

39. Among other data intercepted by Defendants, Bylock's data is wire, oral, or electronic communications within the meaning of the Wiretap Act, 18 U.S.C. §2510.

40. Defendants' acquisition of Bylock's data, including call logs, messages, and user information, is an interception within the meaning of the Wiretap Act because it is an acquisition of the contents of over half a million users' communications by use of any electronic, mechanical, or other device.

41. Keynes and Bylock's users had a reasonable expectation that their wire, oral, or electronic data would remain private.

42. Keynes is a person whose wire, oral, or electronic communications were intercepted within the meaning of 18 U.S.C. § 2520.

6

43.     Under 18 U.S.C. §2520(b)-(c), Keynes is entitled to recover (i) the greater of (a) his actual damages and any profits made by Defendants as a result of the violations described above, or (b) statutory damages of $100 per day each day of violation or $10,000, whichever is greater; (ii) punitive damages in an amount to be proven at trial; and (iii) the reasonable attorneys' fees and costs he incurs in bringing this action.

**Second Cause of Action**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.**

44.     Keynes repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as it sets forth fully herein.

45.     Bylock's system and application that store the users' information and other information that Defendants unlawfully accessed are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate and foreign commerce and communication.

46.     Defendants intentionally hacked the system without authorization.

47.     Defendants obtained information from Bylock's server by unlawfully accessing the server.

48.     As a result of Defendants' intrusions, Keynes has suffered loss.

49.     In committing the intrusions described above, Defendants violated 18 U.S.C. §1030(a)(2)(C). Keynes and is entitled to an award of economic damages under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

**Third Cause of Action**
**Conversion**

50.     Keynes repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as it sets forth fully herein.

51.     The user information and other confidential information that Defendants unlawfully accessed, including, among other things text messages, phone call logs, and pictures, are Bylock's and its users' exclusive property.

52.     By unlawfully accessing Bylock's user information and other confidential information, Defendants exercised dominion and control over Keynes' property in a manner inconsistent with his rights to control it. Specifically, by unlawfully accessing the information, Defendants exercised control over it in a manner inconsistent with Keynes' right to keep it confidential; as described above, Defendants were not authorized to access or view the private information into which Defendants hacked, or to access or view Keynes' other confidential information.

53.     Additionally, by unlawfully causing Plaintiff's servers and application to transmit Plaintiff's confidential business information to the computers or other electronic devices used to commit the hacking, Defendants exercised control over the information in a manner inconsistent with Plaintiffs' rights to limit its dissemination to computers or other electronic devices belonging to authorized users of Bylock.

54.     As a result of Defendants' conversion, Keynes has suffered damages, including the costs associated with remediating the intrusions described above. Keynes is entitled to awards of economic damages and punitive damages in amounts to be proven at trial.

### Fourth Cause of Action
### Violation of Virginia Computer Trespass Act § 18.2-152

55.     Keynes repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as it sets forth fully herein.

56.     Defendants used Bylock's computer network without authority, obtained property by false pretenses, and converted Keynes' property in violation of Va. Code. Ann. § 18.2-152.3.

8

57.     Defendants, with malicious intent:

   a.   temporarily or permanently removed, halted, or otherwise disabled computer data, computer programs or computer software from Bylock's server or computer network, in violation of Va. Code. Ann. § 18.2-152.4;

   b.   caused Bylock's server to malfunction, in violation of Va. Code. Ann. § 18.2-152.4(2);

   c.   used a computer or computer network to make or cause to be made an unauthorized copy of computer data, computer programs or computer software residing in, communicated by, or produced by a computer or computer network, in violation of Va. Code. Ann. § 18.2-152.4(6); and

   d.   installed or caused to be installed, or collected information through, a keystroke logger on Bylock's computers and server and, without their authorization, in violation of Va. Code. Ann. § 18.2-152.4(8).

58.     Defendants used a computer or computer network and intentionally acquired without authority Bylock's users identifying information, text messages, emails, and phone logs, in violation of Va. Code. Ann. § 18.2-152.5.

59.     Each Defendant knowingly aided, abetted, encouraged, induced, instigated, contributed to and assisted the other Defendants' violation of Va. Code. Ann. § 18.2-152.3, § 18.2-152.4, and § 18.2-152.4.

60.     All Defendants' violations of the foregoing provisions caused Keynes injury. This injury includes, but is not limited to, injury resulting from harm to Bylock's computers and servers, loss in the value of Bylock's users and business information, and harm to the business. Keynes is entitled to recover damages and the costs of suit under Va. Code. Ann. § 18.2-152.12.

9

**Fifth Cause of Action**
**Virginia Business Conspiracy Act § 18.2-499/500**

61.     Keynes repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as it sets forth fully herein.

62.     Defendants unlawfully conspired and contrived with each other, among other things, to acquire Bylock's user information and to interfere with Keynes' business with malice for the purpose of injuring them and their business.

63.     Defendants did conspire and engage in a concerted action to deprive Keynes of his property. Defendants by their acts and action, combined, associated, mutually undertook and acted in concert together in an intentional and conscious scheme for the purpose of maliciously and willfully injuring Keynes in his reputation, trade and business.

64.     Notwithstanding Defendants actual or constructive knowledge of Keynes' ownership of Bylock, the Defendants willfully and purposefully engaged in concerted action and with malice and the intent to injure Keynes by stealing users' information, emails, text messages, and phone logs from Bylock's server.

65.     The Defendants used improper methods to acquire Bylock's information. Defendants hacked the server with the purpose and intent of injuring Keynes in violation of Va. Code. § 18.2-499 and 500.

66.     Such actions were intentional, without legal justification and constitute legal malice and have directly and proximately caused Keynes substantial damages. Pursuant to Va. Code. § 18.2-500, as amended, Keynes are entitled to three-fold their actual damages, attorney's fees, and costs.

67.     Keynes is damaged as a direct, proximate and foreseeable result of the willful and intentional conduct of Defendants and their conspiratorial conduct in willful disregard of Keynes'

10

rights, thus justifying the awarding of punitive damages to Plaintiffs in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Keynes respectfully requests that the Court:

1. An order preliminary and permanently enjoining Defendants, and all persons acting in concert with or on behalf of Defendants, from using, disclosing, or possessing any Bylock information accessed, viewed, or otherwise obtained as a result of their unlawful intrusions into Bylock's private servers and application, to the extent Defendants possess any such information;

2. An award of damages, including but not limited to economic, statutory, and punitive damages, as permitted by law and in amount of $100,000;

3. The reasonable attorneys' fees and other costs and expenses of suit to the extent permitted by law; and

4. Grant Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby request a trial by jury for all issues so triable.

Dated this 3rd  day of July 2018

Respectfully submitted,
DAVID KEYNES

11

By Counsel: /s/_____
J. Chapman Petersen, Esq., VSB #37225
David L. Amos, Esq., VSB #87271
Abby Mulugeta, Esq., VSB #92424
Chap Petersen & Associates, PLC
3970 Chain Bridge Road
Fairfax, VA 22030
Telephone 571-459-2512
Facsimile 571-459-2307
jcp@petersenfirm.com
dla@petersenfirm.com
agm@petersenfirm.com
*Counsel for Plaintiffs*